# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| SCOTT D. PLUM, <br><br> Plaintiff, <br><br> vs. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | No. C16-3012-LTS <br><br> **MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |

## I. INTRODUCTION

This case is before me on a Report and Recommendation (R&R) by the Honorable C.J. Williams, Chief United States Magistrate Judge. *See* Doc. No. 16. Judge Williams recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Scott Plum's application for Social Security disability benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 et seq. (Act).

Plum has filed timely objections (Doc. No. 17) to the R&R. The Commissioner has not filed a response. The procedural history and relevant facts are set forth in the R&R and are repeated herein only to the extent necessary.

## II. APPLICABLE STANDARDS

*A.    Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 641, 645 (8th Cir. 1999.) The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th

Cir. 2008)). This is true even if the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B. Review of Report and Recommendation

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of*

3

*Bessemer City*, 470 U.S. 564, 573 74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. THE R&R

Judge Williams noted that Plum alleged disability due to seizures and memory loss suffered in a motorcycle accident in which he fractured his skull. Doc. No. 16 at 1-2. After setting forth the relevant facts, he reviewed the ALJ's credibility assessment, finding as follows:

> The ALJ found claimant was not a credible source regarding the intensity, persistence, and functionally limiting effects of his impairments. (AR 20-21). In assessing claimant's credibility, the ALJ referenced and considered the factors set out in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). (AR 17, 21-22). The ALJ considered the following factors: (1) claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. (AR 21) (citing SSR 96-7p[1], 1996 WL 374186 (July 2, 1996)).
>
> The ALJ examined claimant's daily activities and found them inconsistent with claimant's description of the severity of his alleged seizures and memory problems. (AR 19, 21). The ALJ found claimant was "capable of self-care, preparing simple foods, cleaning, laundry, and

---

[1] The Court notes that SSR 16-3p superseded SSR 96-7p on March 28, 2016. At the time of the ALJ's decision, however, SSR 96-7p was in effect.

4

> household repairs." (AR 22). Claimant walked, biked, fished, watched television, played computer games, fed the dog, ironed clothes, shopped, went to car shows, helped friends with car repairs, used the library, mowed the yard, and went to friends' homes, sports events, and sports bars to hang out. (AR 16, 22, 334-38, 878-81). Claimant also maintained the unusual hobby of collecting thousands of four-leaf clovers and laminating them, on which he testified he spent an "inordinate" amount of time. (AR 22, 77, 319, 881). It was reasonable for the ALJ to conclude that these activities took a degree of concentration and memory that was inconsistent with claimant's statement that he was unable to remember what he did the day before the hearing. (AR 22, 44).
>
> The ALJ also found claimant's poor compliance with medications and treatment damaged his credibility. (AR 18, 22, 503, 530, 727, 730-32, 738). Claimant's poor compliance was not the result of poverty as he was receiving his medications for free. (AR 55). *See Whitman v. Colvin*, 762 F.3d 701, 706 (8th Cir. 2014) (noting that noncompliance medical treatment undercuts credibility). There was also a significant gap in claimant's treatment because he failed to keep appointments in early 2012. (AR 727, 730-32).
>
> The ALJ also concluded that the record showed claimant to be manipulative, often seeking some secondary gain. (AR 19-22). Claimant threatened to kill himself to get into or out of facilities and exaggerated his symptoms and got angry when things did not go his way. (AR 479-81). In January 2010, claimant endorsed serious depression, but a therapist observed that claimant's affect and mood were "incongruent" with his alleged depression. (AR 540-42). Similarly, in 2011, claimant was hospitalized briefly for suicidal ideation but improved rapidly and specifically requested assistance obtaining disability benefits. (AR 814, 823, 850). The ALJ properly considered this behavior and motivation in assessing claimant's credibility. *See, e.g.*, *Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010) (holding that ALJ could take into account a claimant's exaggeration of symptoms in assessing credibility); *Eichelberger*, 390 F.3d at 589 (holding that an ALJ may consider motivation for secondary gain in assessing credibility).

Doc. No. 16 at 8-10. Judge Williams found that the record as a whole contained substantial evidence to support the ALJ's credibility assessment. *Id.* at 11. In

addition, Judge Williams noted that the ALJ's credibility assessment affected the assessment of the medical opinions. *Id*.

Turning to the evaluation of the medical evidence, Judge Williams outlined the ALJ's opinion as follows:

> It is true that Dr. Akbar, as a psychiatrist who saw claimant on a number of occasions between 2011 and 2014 (AR 717, 894-900, 907-08), is "an acceptable medical source" (20 C.F.R. § 404.1513(a)). The record does not, however, support the finding that Dr. Akbar worked as a team with Mr. Dickinson such that Mr. Dickinson's opinion must be elevated to that of an acceptable medical source. The medical records simply do not reflect that Dr. Akbar and Mr. Dickinson coordinated treatment of claimant, although they worked in the same facility. Mr. Dickinson's notes did not refer to Dr. Akbar's participation in treatment other than to note Dr. Akbar's diagnosis. (AR 888). *See Lacroix*, 465 F.3d at 886 (considering fact that notes of nurse practitioner and therapists did not reference a doctor's participation in the case as indicating the absence of a treatment team). Dr. Akbar did review and signed a single report issued by Mr. Dickinson. (AR 753). Dr. Akbar did not, however, reference Mr. Dickinson other than simply noting that claimant did not appear to benefit from Mr. Dickinson's treatment. (AR 898-900, 907). Therefore, I do not find sufficient indication that Dr. Akbar and Mr. Dickinson were working as a treatment team to elevate Mr. Dickinson's opinions to those of an acceptable medical source. Regardless, the ALJ considered the opinions of Mr. Dickinson along with those of all the other medical providers.
>
> The ALJ weighed the opinions of various medical providers, affording some more weight than others. The ALJ afforded Dr. Akbar's opinions "some weight," although he noted that "the value of Dr. Akbar's opinions is [sic] diminished when they are compared with his observations and treatment notes." (AR 20). The ALJ gave partial weight to Dr. Akbar's April 2014 statement regarding claimant's mental problems and included some of those limitations in claimant's residual functional capacity assessment. (AR 20, 907-14). But the ALJ concluded in other respects that Dr. Akbar's clinical observations were "completely at odds with the extreme limits he identified in" his opinion. (AR 20). For example, on the same day Dr. Akbar "reviewed" Mr. Dickinson's opinion that claimant had extremely limited memory, Dr. Akbar's own records showed that claimant's memory was "intact." (AR 900). An ALJ may discount the

6

weight given to opinions of treating doctors when, as here, the opinions are inconsistent with other medical records. *See Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013) ("We conclude that substantial evidence supports the ALJ's determination that [the doctor's] opinion was inconsistent with the treatment record and thus not entitled to controlling weight.").

The ALJ afforded little weight to the opinions of Mr. Dickinson, finding "the medical evidence of record simply does not support" the limitations Mr. Dickinson endorsed. (AR 19). The ALJ also found there was "nothing in the treatment notes from Mr. Dickenson that would provide a factual basis for his conclusion about work absences." *Id*. The ALJ also found that claimant's daily activities and work history were inconsistent with the limitations that Mr. Dickinson endorsed. *Id*.

The ALJ similarly afforded little weight to the opinions of Dr. J. Michael Seeley. (AR 18). The ALJ noted that Dr. Seeley relied heavily on subjective assertions by claimant and [Rosemary] Weidler, and not on his own observations or objective medical evidence. (AR 18, 611). The ALJ afforded little weight to the opinions of consultative psychologist Ralph Scott, Ph.D. (AR 19). The ALJ discounted the weight to afford the opinions because it relied on claimant's subjective allegations. (AR 19, 651-55). The ALJ further noted that Dr. Scott's own notes reflected that much of the history reported "has not been verified and is based on client reports." (AR 19, 655). The ALJ did give some credit to Dr. Scott's testing, however, which "show[ed] problems with memory," but noted that claimant's memory "remains at a functional level, especially for rote learning and visual learning." (AR 653-54, 659).

Finally, the ALJ gave weight to the opinion of state agency medical consultant, Beverly Westra, Ph.D., who found claimant was not disabled, because her opinions were consistent with the other medical evidence, including that from the UIHC. (AR 20, 656- 59). State agency psychological consultants, like Dr. Westra, are highly qualified experts in the evaluation of the medical issues in disability cases. SSR 96-6p, 1996 WL 374180 (July 2, 1996), at *1. Accordingly, the ALJ acted well within his discretion in affording Dr. Westra's opinion where, as here, that opinion was supported by other medical evidence.

7

Doc. No. 16 at 12-14. Judge Williams found that the ALJ properly discounted the medical opinions of Doctors Akbar, Seeley and Ralph Scott, as well as that of Mr. Dickinson, because they each relied upon Plum's subjective complaints which the ALJ properly found were not credible. *Id.* at 14. Judge Williams noted that Plum's allegations of seizures were inconsistent and that Ms. Weidler's account of his seizures varied greatly with Plum's inconsistent allegations. *Id.* at 14-15. Additionally, Judge Williams noted that objective medical testing did not corroborate the number or severity of seizures alleged by Plum. *Id.* at 15-16. Judge Williams found that substantial evidence in the record as a whole supported the ALJ's evaluation of the medical evidence. *Id.* at 17.

Judge Williams addressed the ALJ's RFC assessment as follows:

> The medical records do support a finding that claimant had problems with memory. (AR 864, 907-908). Dr. Scott was a consultative examining psychologist. Dr. Westra noted that Dr. Scott's clinical findings "show[ed] problems with memory, but it remains at a functional level, especially for rote learning and visual learning." (AR 653- 54, 659). Dr. Westra rated claimant's functioning in twenty work-related areas, finding no significant limitations in nine of those areas and only moderate limitations in the remaining eleven. (AR 656-57). Based on Dr. Westra's review of claimant's medical records, she concluded claimant could perform "simple, repetitive, and overlearned tasks in predictable settings with minimal social demands." (AR 659). Dr. Westra also opined that claimant could learn new tasks, but it might take him longer. *Id.* She also concluded claimant could manage superficial contact with others. *Id.*
>
> In determining claimant's residual functional capacity, the ALJ accounted for claimant's memory problems by restricting claimant to simple, routine, repetitive tasks with little interaction with others and no independent judgment. (AR 16-17). The ALJ accounted for claimant's need for predictable settings with minimal social demands by restricting him to tasks that would not require him to interact, share, or gather information from the public. (AR 17). To account for claimant's need for only superficial contact with others, the ALJ indicated that claimant requires a job that is performed independently, and that he should not be required to coordinate his efforts with others, or organize his efforts with

8

> others to achieve a task. *Id.* The ALJ's residual functional capacity determination, therefore, was consistent with the reviewing doctor's findings. *See Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016) (finding the ALJ's residual functional capacity assessment was supported by substantial evidence, noting that it was consistent with the limitations identified by the reviewing consultant). With all of these limitations in mind, the independent vocational expert testified that there were thousands of jobs in Iowa and in the nation that claimant could still perform. (AR 23-24).

Doc. No. 16 at 17-18. Judge Williams concluded that the ALJ considered all the opinions and medical evidence in determining the RFC. *Id.* at 19. As such, Judge Williams found no error in the ALJ's RFC determination, concluding that "even if some evidence may support claimant's assertion that he had other functional limitations, 'the ALJ adequately articulated his reasons for not fully crediting [claimant's] subjective complaints.'" *Id.* (citing *Buford*, 824 F.3d at 797).

## IV. DISCUSSION

### A. *Plum's Objections*

Plum objects to Judge Williams' findings that (1) the ALJ properly weighed the medical evidence and properly discounted the work-related limitations offered by Dr. Akbar and Therapist Scott Dickinson and (2) the ALJ's RFC is supported by substantial evidence. I will review those issues de novo.

### B. *The ALJ's RFC Assessment*

Plum argues that the ALJ's RFC failed to account for work-related limitations provided by his "treatment team," Raja M. Akbar, M.D., and Scott Dickinson, LMHC (licensed medical health counselor). Plum argues that these opinions were consistent with the opinions of J. Michael Seeley, M.D., and consultative psychologist Ralph Scott, Ph.D. However, Plum does not appear to object to Judge Williams' finding that the ALJ

9

properly discounted the opinions of Dr. Seeley and Dr. Scott. As such I will review those findings for clear error. Based on my de novo review of Plum's objections, I find no error, clear or otherwise.

Although Plum contends that Mr. Dickinson was part of his treatment team and therefore his opinion deserves the same credence as that of Dr. Akbar's, the record does not support this finding. *See Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006) (finding that the opinions of the therapists and nurse practitioners were not entitled to "greater weight" than non-treating consultants because the record did not illustrate that the treating doctor participated in claimant's care provided by the therapists and nurse practitioner). Here, Dr. Akbar endorsed one of Mr. Dickinson's reports and later updated the same report when replying to Plum's attorney's information request, making the same findings in virtually all categories. AR 748-53, 907. Aside from these instances, Dr. Akbar did not mention Mr. Dickinson's care, other than noting that Plum did not appear to benefit from the treatment, nor is there evidence that Dr. Akbar participated in the care provided by Mr. Dickinson. AR 896-900. Further, as I will explain below, Dr. Akbar contradicted Mr. Dickinson's findings of severe impairments in his progress notes. As such, Mr. Dickinson's opinion is not entitled to "greater weight." Further, even if Mr. Dickinson and Dr. Akbar were part of a treatment team, Mr. Dickinson's opinion would not deserve the same weight as Dr. Akbar's. *See Lacroix*, 465 F. 3d at 886 (citing *Shontos v. Barnhart*, 328 F.3d 418, 426-27 (8th Cir. 2003)). Finally, a finding that there is a treatment team does not eliminate the need to evaluate the opinion evidence.

**Mr. Dickinson**. In reviewing the opinion of Scott Dickinson, LMHC, the ALJ afforded it "little weight," because the medical record does not support the limitations he endorsed. AR 19. Like Judge Williams, I find that the objective medical evidence does not support the level of severity Plum claims. There is a complete lack of medical evidence not based on Plum's self-reported symptoms. AR 867-74. The absence of such

evidence supports the ALJ's finding. Ultimately, of course, the claimant bears the burden to demonstrate his disability. *See Eichelberger v. Barnhart,* 390 F.3d 584, 591 (8th Cir. 2004). EEG studies failed to register the existence of any seizures. AR 506, 867, 873. While staying at the University of Iowa Hospitals and Clinics (UIHC), video electroencephalography (VEEG) monitoring did not capture any seizures, despite Plum's claim that he experienced three to five seizures a day. AR 866-70. In March 2010, Plum was admitted to a mental health facility for four days and staff did not record any observations of seizures, despite Plum's claim that during this time period he was having daily seizures and despite the fact that he was placed under close supervision due to his suicidal ideation. AR 479-81. Finally, neurological examinations reflected normal findings. AR 529, 502, 507, 618, 826, 864-66. Although Mr. Dickinson found severe limitations, Plum's activities of daily living, the medical evidence and work history before and after the alleged onset date do not support such severe limitations. Based on my de novo review, I find no error. As such, Plum's objection is overruled.

**Dr. Akbar.** Plum contends that the ALJ's RFC is flawed because it failed to include Dr. Akbar's work-related limitations. The ALJ gave Dr. Akbar's opinion "some weight" but found that "the value of Dr. Akbar's opinions is diminished when they are compared with his observations and treatment notes." AR 20. In updating Mr. Dickinson's "mental impairment interrogatories," Dr. Akbar agreed with Mr. Dickinson's opinion that Plum would permanently experience poor memory, difficulty thinking or concentrating, generalized persistent anxiety, suicidal ideation or attempts, mood disturbance and that his memory was "very impaired." AR 907-08, 748-53. This opinion, along with the extreme limitations it accompanied, contrasts sharply with Dr. Akbar's report finding Plum's memory was intact, he was fully oriented, doing well, cooperative, more talkative and had a stable mood. AR 896. "Physician opinions that are internally inconsistent . . . are entitled to less deference than they would receive in the absence of inconsistencies." *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir.

11

2005). In addition, the ALJ's RFC took Plum's mental limitations into account in requiring that he only "work tasks that are simple, routine, and repetitive and which do not require any close attention to detail or any independent judgment on the job." AR 16. I find no error with the ALJ's RFC and the supporting evaluation of Dr. Akbar's opinion.

**Dr. Scott**. Plum contends that the ALJ failed to mention objective memory testing conducted by Dr. Ralph Scott that supported his opinion. However, the ALJ specifically referenced this testing. AR 19. On January 14, 2011, Dr. Scott performed a consultative examination and administered a Wechsler Memory Scale IV test. AR 651-55. Dr. Scott opined that Plum's "short term memory functioning was moderately to severely impaired and remote memory functioning moderately below age norms." AR 651. Dr. Scott found that Plum registered in the 25th percentile with regard to structured and rote memory tasks, but did not score above the 9th percentile with regard to the remaining testing. AR 654.

The ALJ noted that Dr. Scott concluded that Plum's ability to "remember and understand instructions and to maintain attention, concentration, and pace was marginally fair to poor." AR 19. The ALJ also noted that Dr. Scott found that Plum would have difficulty maintaining part-time employment. *Id.* The ALJ discounted Dr. Scott's opinion because he noted that much of the history "has not been verified and is based on client reports." *Id.* The ALJ gave little weight to Dr. Scott's opinion because it was generally inconsistent with the record, noting that Plum's previous employer, Myer Truck Center, reported that he was able to work full time and would rehire him if the opportunity arose. *Id.*

I find the ALJ properly discounted Dr. Scott's opinion. Although Dr. Scott opined that Plum would have difficulty with a part-time job, a physician's conclusion that an applicant is "disabled" or "unable to work" addresses an issue that is reserved for the Commissioner and therefore is not a "medical opinion." *Ellis v. Barnhart*, 392 F.3d

12

988, 994 (8th Cir. 2005). As such, the ALJ was free to reject this conclusion. In addition, the ALJ's RFC included memory limitations and Plum's work history contradicts Dr. Scott's opinion. As such, I find no error.

**Dr. Seeley**. Plum argues that the record contains documentation of his memory problems. Specifically, Plum cites an evaluation performed by Dr. Seeley, who issued a statement on Plum's behalf. AR 611-12. Dr. Seeley opined that due to Plum's disorder, he experienced short-term memory loss and had a difficult time maintaining a job. *Id.* The ALJ noted that there was no evidence that Plum experienced a seizure or blackout at work, despite his lack of medication during that time period, and that his previous employer would rehire him if given the opportunity. AR 18-19. As such, the ALJ afforded little weight to Dr. Seeley's opinion. Dr. Seeley's findings are based largely on Plum's subjective complaints and are not supported by objective medical testing. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (providing that an ALJ is entitled to give less weight to a medical source opinion where the opinion is based on a claimant's subjective complaints rather than on objective medical evidence). Moreover, Plum does not object to Judge Williams' conclusion that the ALJ was entitled to find his subjective complaints to be not entirely credible. Plum's work history and his activities of daily living do not support the severe limitations described in Dr. Seeley's opinion. I find no error with regard to the ALJ's evaluation of that opinion.

The ALJ rejected the opinions of Dr. Akbar, Mr. Dickinson, Dr. Seeley and Dr. Scott because they were not supported by objective medical testing, the record as a whole and were based largely on Plum's subjective complaints. Here, Plum stopped working at Myer Truck Center in October 2008 and alleges an onset date of November 30, 2008, two months after he left his job. Although Plum stated he was let go from his job due to a comment he made to a co-worker, his employer stated it was due to a lack of work. AR 52-54, 344. In addition, Plum worked 40 hours a week changing oil in January 2010 and testified during an administrative hearing that he believed he could continue to

perform that job, provided he did not operate a lift. AR 79-80, 294-95. Plum also spent time repairing friends' cars. AR 319. Plum stated he performs all self-care, does laundry, prepares simple meals, plays games on the computer, feeds the dog, shops with a friend once a week for food, helps with simple housework, goes to car shows, fishes with friends, watches TV, goes to sports bars and sporting events, and mows the yard. AR 16, 22, 334-89, 878-81. As the ALJ noted, these activities require some amount of memory and concentration. "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (internal citations omitted)). The ALJ was entitled to find that the opinions of Dr. Akbar, Mr. Dickinson, Dr. Seeley and Dr. Scott were not entirely supported by the record as a whole. I find no error.

Finally, Plum contends the R&R incorrectly required objective medical evidence supporting his seizures. Citing the relevant listing, Plum claims there is no such requirement. *See* Doc. No. 17-1 at 8-9. The listing requires "at least one detailed description of your seizures from someone, preferably a medical professional, who has observed at least one of your typical seizures." 20 C.F.R. Part 404, Subpt. P, App. 1, § 11.00(H)(2). While it is true that the record contains statements about Plum's seizures from Rosemary Weidler,[2] I find the ALJ properly evaluated these claims and accounted for them in formulating the RFC. The record contains no statement from any medical professional who observed his seizures and the ALJ properly considered and discounted the claims presented by both Plum and Ms. Weilder due to inconsistencies with each other and the record. AR 327, 329. The ALJ found at Step Three that Plum had a severe

---

[2] Although the ALJ refers to Rosemary Weidler, LPN, as Plum's "nurse advocate," she is not engaged in any medical care for Plum. Instead, Plum resides with Ms. Weidler and receives some assistance from her, although on a non-medical relationship basis. As such, the ALJ was required to evaluate Ms. Weidler's statements in the same manner as any other third-party's submission.

seizure disorder and Plum makes no objection to the ALJ's Step Four finding that he did not meet the listing requirement. As Judge Williams found, the objective medical testing available did not corroborate the number or severity of Plum's alleged seizures and associated limitations. I find no error with the ALJ's finding. Plum's objection is overruled.

C.  *The RFC Assessment*

Plum argues that the ALJ's RFC assessment is not supported by substantial evidence. Plum contends the RFC is flawed because it is not supported by any treating or examining source, suggesting that the ALJ failed to fully develop the record. I disagree.

The ALJ found that Plum had the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> He is able to work where he is not exposed to hazards such as unprotected heights or near unguarded moving machinery. He is able to perform work tasks that are simple, routine, and repetitive and which do not require any close attention to detail or any independent judgment on the job. In addition, he requires an occupation where all of the tasks assigned to him can be performed without interaction with the public. He could, however, be in proximity to a member of the public, but none of the jobs tasks can require him to interact, share information, or gather information with the public. Moreover, he requires an occupation that is performed independently, and not be required to coordinate his efforts with others, or organize his efforts with others to achieve a task.

AR 16-17. I find that the ALJ's RFC determination was consistent with, and fully accounted for, work limitations supported by substantial evidence. *See Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016) (finding the ALJ's residual functional capacity assessment was supported by substantial evidence, noting that it was consistent with the limitations identified by the reviewing consultant).

The ALJ's reliance on the state agency consultative psychologist's opinion provided substantial evidence for the ALJ's RFC assessment. *See Buford*, 824 F.3d at 797 (finding ALJ did not have to obtain "an opinion from a treating or consultative doctor as to Buford's work related limitations" because "medical assessments of state agency medical consultants as to Buford's limitations are of record and were expressly considered by the ALJ."). An ALJ's RFC findings do not need to "be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932. Therefore, even if some evidence may support claimant's assertion that he had other functional limitations, "the ALJ adequately articulated his reasons for not fully crediting [claimant's] subjective complaints." *Buford*, 824 F.3d at 797. Additionally, as stated above, the ALJ properly discounted portions of the medical evidence based on Plum's unsupported subjective complaints.

Finally, Plum argues that the ALJ did not review the state agency psychological consultants' opinions. However, the ALJ expressly referenced these opinions in his findings and indicated that he afforded weight to them. AR 20. I note that Beverly Westra, Ph.D., a state agency consultant, found that Plum had no significant limitations in understanding and memory, sustained concentration and persistence, social interaction or adaptation. AR 656-57. Dr. Westra also found that although Plum's memory is impaired, it "remains at a functional level, especially for rote learning and visual learning." AR 659.

Based on my de novo review, I find the RFC is supported by substantial evidence. Plum's objection is overruled.

## V. CONCLUSION

For the reasons set forth herein:

1. Plaintiff Scott D. Plum's objections (Doc. No. 17) to the magistrate judge's report and recommendation are **overruled**.

16

2.	Judge Williams' Report and Recommendation (Doc. No. 16) is **accepted without modification**.

3.	The Commissioner's determination that Plum was not disabled is **affirmed**.

4.	Judgment shall enter against Plum and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 31st day of March, 2017.

_____
LEONARD T. STRAND
CHIEF UNITED STATES DISTRICT JUDGE